## APPEAL OF NEW YORK THEATRE PROGRAM CORPORATION.

Docket No. 4357.    Decided July 27, 1926.

Certain amounts paid to officers and stockholders and deducted as compensation for services rendered, *held* to have represented a distribution of profits.

*Mark Eisner, Esq.,* for the petitioner.
*L. C. Mitchell, Esq.,* for the Commissioner.

Before LITTLETON, SMITH, and TRUSSELL.

### FINDINGS OF FACT.

The taxpayer is a New York corporation engaged in the business of printing theatre programs, together with advertising matter contained therein, which it secures through its stockholders and salesmen employed for that purpose.

During the fiscal year ending May 31, 1921, the taxpayer printed theatre programs for approximately 55 theatres in New York City. These programs were furnished to the various theatres without cost, and substantially all of the taxpayer's income was derived from profits upon charges for advertisements inserted therein. The entire capital stock of the taxpayer was owned as follows:

|  | Shares. |
|---|---|
| Frank V. Storrs | 1,965 |
| Ralph Trier | 750 |
| Richard M. Huber | 285 |

Trier was president of the corporation and received a regular salary of $15,000 a year. Huber was vice president and received a regular salary of $8,000 a year. One Chevalier was secretary and received a salary of $12,363.63 a year. Storrs held no executive position with the company but was chairman of the board of directors.

He received no fixed compensation. Certain salesmen employed by the corporation for the purpose of securing advertising contracts were paid a commission of 20 per cent.

Trier had charge of obtaining contracts from operators of theatres for the privilege of printing their programs and also solicited advertising contracts. Huber had charge of the printing of the programs. He also solicited advertising contracts. Storrs had been in the advertising business for approximately 25 years and devoted a portion of his time in 1921 and prior years to soliciting advertising contracts. Trier and Huber, up to the taxable year 1921, had been with the taxpayer in the above mentioned capacity for six years.

The following advertising contracts were credited to the three stockholders:

| | Amount | Date |
|---|---|---|
| FRANK V. STORRS: | | |
| *Advertiser* | | |
| American Chicle Company | $14,534.66 | Aug. 26, 1919 |
| United States Tire | 5,530.29 | Oct. 15, 1920 |
| N Erlanger Blumgart & Company | 1,522.00 | July 12, 1920 |
| Finchley | 7,457.49 | Feb. 20, 1920 |
| Gotham Silk Hosiery Company | 12,592.00 | None |
| B. F. Goodrich Company | 4,858.33 | Nov. 24, 1919 |
| Belle Meade Sweets | 7,319.78 | Apr. 26, 1920 |
| A. Jaeckel & Company | 6,828.34 | July 15, 1920 |
| P. Lorillard & Company | 77,769.31 | Feb. 6, 1919 |
| National Biscuit Company | 16,263.75 | Nov. 7, 1919 |
| Oppenheim Collins and Co., N. Y. | 11,486.51 | None |
| Oppenheim Collins and Co. Brooklyn | 1,543.00 | None |
| C. C. Shayne & Company | 5,210.18 | Dec. 22, 1919 |
| Steinway and Sons | 5,734.00 | Mar. 25, 1920 |
| Select Pictures Corporation | 17,499.98 | June 28, 1920 |
| Smith Brothers | 3,241.43 | Dec. 16, 1919 |
| Strouse Adler & Company | 12,000.00 | July 21, 1920 |
| A. Wimpfheimer & Co | 4,457.62 | Jan. 5, 1920 |
| Total | 215,848.67 | |
| RALPH TRIER: | | |
| *Advertiser* | | |
| Abercrombie & Fitch | 9,798.75 | Mar. 25, 1920 |
| Columbia Graphophone | 17,833.32 | Dec. 22, 1919 |
| Corn Exchange Bank | 11,749.40 | Nov. 19, 1919 |
| J. M. Gidding & Company | 6,382.91 | Dec. 26, 1919 |
| Kelly Springfield Tire Co | 26,000.00 | Dec. 31, 1919 |
| Rogers Peet Company | 11,060.83 | Feb. 9, 1920 |
| | 82,825.21 | |
| RICHARD M. HUBER: | | |
| *Advertiser* | | |
| A. H. Smith & Company | 24,825.00 | July 28, 1920 |
| Hyatt Roller Bearing Co | 708.33 | Nov. 13, 1919 |
| Keyes and Lockwood | 4,326.83 | July 7, 1920 |
| Superior Underwear Company | 1,716.15 | Mar. 15, 1920 |
| | 31,576.31 | |

During the taxable year the taxpayer credited to the accounts of the three stockholders certain amounts, computed upon the basis of the stockholdings, as follows:

| Date paid | Per share | F. V. Storrs 1,965 shares | Ralph Trier 750 shares | R. M. Huber 285 shares | Total |
|---|---|---|---|---|---|
| July 19, 1920 | $2.00 | $3,930.00 | $1,500.00 | $570.00 | $6,000.00 |
| Jan. 19, 1921 | 3.00 | 5,895.00 | 2,250.00 | 855.00 | 9,000.00 |
| Feb. 19, 1921 | 3.00 | 5,895.00 | 2,250.00 | 855.00 | 9,000.00 |
| Mar. 16, 1921 | 4.00 | 7,860.00 | 3,000.00 | 1,140.00 | 12,000.00 |
| May 13, 1921 | 8.00 | 15,720.00 | 6,000.00 | 2,280.00 | 24,000.00 |
| May 31, 1921 | 1.8034 | 3,543.62 | 1,352.54 | 513.99 | 5,410.15 |
| | | 42,843.62 | 16,352.54 | 6,213.99 | 65,410.15 |

The taxpayer carried upon its books a commission account to which was charged all commissions due to salesmen. The amounts paid to the stockholders were never entered in the commission account but, on May 31, 1921, an entry was made upon the books charging " Officers' Salaries " with the amount of the payments made to them and crediting " Stockholders' Account " previously charged. Between January and March, 1920, the stockholders discussed the matter of profits from advertising and concluded to pay to each stockholder during the fiscal year ending May 31, 1921, 20 per cent of the profits arising from contracts secured by him. In the years prior to 1921, it had not been the custom of the taxpayer to pay its officers or stockholders commissions upon advertising contracts secured, the profits earned by the corporation being distributed as dividends. The fiscal year ending May 31, 1921, was the most prosperous in the taxpayer's history. No payments were made to stockholders during the taxable year 1921, or any year subsequent thereto, as dividends, or otherwise, on account of the profits during that year, with the exception of the amounts paid as commission.

### OPINION.

LITTLETON: The taxpayer contends that the amount of $65,410.15 paid to its stockholders during the fiscal year ending May 31, 1921, should be allowed as a deduction as an ordinary and necessary expense, as additional compensation for services rendered during that year. The Commissioner allowed the taxpayer to deduct $15,000, $8,000 and $12,363.63, representing regular compensation of the president, vice president, and secretary, respectively, but disallowed the deduction of the first-mentioned amount upon the ground that the same represented a distribution by the taxpayer of profits to its stockholders.

The taxpayer further claims that, while the payments made were computed upon the number of shares of stock held by each stockholder, the stock holdings were used as a convenient basis for arriving at the amount which each stockholder should receive upon

the basis of 20 per cent and that the amounts so paid, together with the regular compensation fixed by the directors, were no more than reasonable compensation for the services rendered.

The statute, section 234 of the Revenue Act of 1921, provides that a corporate taxpayer shall be allowed a deduction of reasonable compensation for personal services actually rendered. It is not the policy of the law to allow a corporate taxpayer to deduct amounts paid in the form of compensation when, in reality, such payments amount to a distribution of profits or are made in lieu of the payment of dividends. When, as in this case, profits are distributed to the owners of all of the stock in proportion to the number of shares held by each, and claimed as deductions in addition to the regular compensation fixed by the directors, the evidence offered that such payments were in fact reasonable compensation for personal services actually rendered must be convincing, especially where the sole stockholders constitute the board of directors.

Frank V. Storrs, the majority stockholder, was interested in other corporations and held no executive position with the taxpayer. He devoted only a portion of his time to securing advertising contracts. So far as the evidence shows, he had never been paid a salary or fixed compensation. Only one witness testified. His testimony does not very clearly show just what was agreed upon by the three stockholders early in 1920, and his statements as to the extent to which other salesmen employed by the taxpayer rendered services in connection with contracts credited to the three stockholders are equivocal. Although the year ending May 31, 1921, was the most prosperous in the taxpayer's history, no payments by way of dividends were made to the stockholders after they had received the amounts claimed to have been paid as compensation.

From all the evidence the Board is of the opinion that the amounts paid to the stockholders between July 19, 1920, and May 31, 1921, did not constitute reasonable compensation but were distributions of profits to the stockholders, and as such are not deductible from gross income.

*Judgment for the Commissioner.*